# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3656

_____

|  |  |  |
|---|---|---|
| Jarvis C. Jones, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| The St. Paul Companies, Inc., | * | District of Minnesota. |
| a Minnesota Corporation; and its | * | |
| wholly owned subsidiary, St. Paul | * | |
| Fire and Marine Insurance Company, | * | |
| | * | |
| Appellants. | * | |

_____

Submitted: April 3, 2007
Filed: August 6, 2007

_____

Before BYE, BRIGHT, and RILEY, Circuit Judges.

_____

BYE, Circuit Judge.

The St. Paul Companies, Inc. (St. Paul), successful in defending claims brought against it in federal court by Jarvis Jones, challenges the district court's[1] declination to enjoin a Georgia state court action Jones later filed against five current or former employees of St. Paul alleging tort claims which, although different from the claims

_____

[1] The Honorable James M. Rosenbaum, Chief Judge, United States District Court for the District of Minnesota.

brought in federal court, arose out of the same set of facts and circumstances. The district court concluded the relitigation exception to the Anti-Injunction Act, 28 U.S.C. § 2283, did not permit enjoining claims that could have been but were not brought in the federal court action. Jones v. St. Paul Cos., Inc., 450 F. Supp. 2d 1003, 1005 (D. Minn. 2006). We affirm.

I

After St. Paul terminated Jones from his position as Regional Vice President of the Small Commercial business unit of St. Paul's U.S. Insurance Operations Division, he sued St. Paul in Minnesota federal district court[2] alleging race discrimination under state and federal law, and defamation. The defamation claim arose from statements his supervisor, Marc E. Schmittlein, made regarding the termination. The federal case went to trial. After hearing from numerous witnesses over nine days, a jury found in favor of St. Paul.

Nine months after the adverse jury verdict, Jones brought an action in Georgia state court[3] against Frank Agan, Bruce Berthelsen, Julia Musial, Louis Snage, and Schmittlein (the Georgia defendants). All five were current or former employees of St. Paul who testified in the federal court action. The Georgia state court action alleged claims of tortious interference with contractual relations against each of the five defendants, as well as one count of tortious interference with prospective business relations against Schmittlein. The five contract interference claims arose out of the events leading to Jones's termination. The prospective business interference claim was based on statements Schmittlein made concerning the reasons for the termination, the same statements which formed the basis for the defamation claim in federal court.

---

[2]St. Paul maintains its corporate headquarters in Minnesota.

[3]At the time of his termination, Jones was working near Atlanta, Georgia, at St. Paul's Small Commercial Center.

The Georgia defendants answered the Georgia state court action asserting, *inter alia*, the action was barred by the doctrine of res judicata. St. Paul brought a motion in the federal court proceeding also arguing res judicata applied, and seeking to enjoin the state court action under the relitigation exception to the Anti-Injunction Act. The Georgia defendants successfully obtained a stay of the Georgia state court action pending resolution of the issues raised by St. Paul in federal court in the District of Minnesota.

The district court denied St. Paul's motion, concluding the relitigation exception did not encompass the full scope of the doctrine of res judicata, that is, while res judicata bars claims actually litigated as well as claims that could have been litigated, the relitigation exception is limited to claims *actually* litigated. Jones, 450 F. Supp. 2d at 1005 (interpreting Chick Kam Choo v. Exxon Corp., 486 U.S. 140 (1988)). Because the tortious interference claims brought in the Georgia state court action were not actually litigated in federal court, the district court declined to issue an injunction determining "the proper forum for defendants' res judicata argument is the state court, which is 'presumed competent to resolve' such matters." Id. (quoting Chick Kam Choo, 486 U.S. at 150).

St. Paul filed a timely appeal. On appeal, St. Paul contends the district court erred in concluding it did not have statutory authority to enjoin the state court action, and assuming it had authority to do so, abused its discretion in declining to issue an injunction. Jones counters that the district court correctly limited the scope of the relitigation exception, and further argues the doctrine of res judicata does not bar the Georgia state court action in any event because the Georgia defendants are not in privity with St. Paul.

II

We review de novo the issue whether the Anti-Injunction Act's relitigation exception applies. Canady v. Allstate Ins. Co., 282 F.3d 1005, 1014 (8th Cir. 2002).

The relitigation exception to the Anti-Injunction Act provides a "court of the United States may not grant an injunction to stay proceedings in a State court except . . . to protect or effectuate its judgments." 28 U.S.C. § 2283. Congress added the phrase "to protect or effectuate its judgments" to the statute in 1948 in response to the Supreme Court's decision in Toucey v. New York Life Insurance Co., 314 U.S. 118 (1941). Toucey reversed two decisions of the Eighth Circuit which enjoined parties from using state courts to relitigate issues already adjudicated in federal court, holding it was inappropriate for federal courts to issue injunctions in such circumstances because the Anti-Injunction Act did not contain an express exception granting that power. 314 U.S. at 139-41. In a dissenting opinion, Justice Reed indicated the majority's decision was inconsistent with how courts had been interpreting the Anti-Injunction Act. Justice Reed believed it was appropriate, under the doctrine of res judicata, for a court which had already examined a claim to enjoin a subsequent court from reexamining a settled controversy. Id. at 149 (Reed, J., dissenting).

Prior to Toucey, courts had generally recognized a federal court's power to enjoin a state court action if the doctrine of res judicata would apply, irrespective of whether the claims involved in the state court action were actually litigated or merely could have been litigated in the federal court proceeding. See, e.g., Gunter v. Atl. Coast Line R.R., 200 U.S. 273, 291, 293 (1906) (affirming an injunction preventing the relitigation of a railroad's exemption from property taxes even though the subsequent state action concerned taxes for a different period of time and thus "related to a different cause of action" than the earlier federal court action); Wilson v. Alexander, 276 F. 875, 882 (5th Cir. 1921) (reversing the denial of a request for injunction to prevent relitigation of a dispute over ownership of bonds even though

-4-

a new theory of recovery was asserted for the first time in the state court action). In amending the Anti-Injunction Act to specifically include the words "to protect or effectuate its judgments," Congress indicated its intent was "[to] restore[] the basic law as generally understood and interpreted prior to the Toucy (sic) decision." Amalgamated Clothing Workers of Am. v. Richman Bros., 348 U.S. 511, 515 n.1 (1955) (quoting H.R. Rep. No. 308 at A181 revisor's notes (1947)).

For forty years after the 1948 amendment, the federal courts were nearly unanimous in interpreting the relitigation exception as encompassing the full scope of res judicata, that is, the exception applied both to claims actually litigated and to claims that could have been litigated. See, e.g., First Ala. Bank, N.A. v. Parsons Steel, Inc., 747 F.2d 1367, 1376 (11th Cir. 1984), rev'd on other grounds, 474 U.S. 518 (1986) ("It is now settled that the relitigation exception enables a federal court to enjoin state litigation which is precluded by the doctrine of res judicata."); Harper Plastics, Inc. v. Amoco Chem. Corp., 657 F.2d 939, 947 (7th Cir. 1981) ("Harper had a full opportunity to join the contract claim with the claim for relief under the Robinson-Patman Act, and by failing to do so it split its cause of action. While § 2283 may be grounded in principles of comity and federalism . . . those principles do not supercede the doctrine of res judicata. The relitigation exception to § 2283 recognizes that much."); CCMS Pub. Co. v. Dooley-Maloof, Inc., 645 F.2d 33, 38 (10th Cir. 1981) ("In the federal case defendants had full opportunity to litigate their claim for earned commissions and they lost. They may not relitigate their claim [in state court] by changing its label to quantum meruit. . . . A federal court may enjoin state proceedings where necessary to protect or effectuate its judgments. 28 U.S.C. § 2283 . . . The injunction was proper.").

The sole exception during this period of time was Delta Air Lines, Inc. v. McCoy Restaurants, Inc., 708 F.2d 582 (11th Cir. 1983). The Eleventh Circuit limited the application of the relitigation exception to those claims *actually* litigated in federal court and did not apply it to claims that *could have been* litigated, explaining:

-5-

Because of the sensitive nature of federal interference with state court litigation, the exceptions to the rule against injunctions, including the third which applies to relitigation of claims that threatens a federal court's judgment, must be narrowly construed. The injury to a litigant from a denial of an injunction often appears minor where the argument is one of relitigation. If the federal court is too cautious, all is not lost. A state court is as well qualified as a federal court to protect a litigant by the doctrines of res adjudicata and collateral estoppel. . . . A federal court's judgment is presumably far more threatened if the state proceeding involves the same issues than if it involves only issues that *could have been, but were not, raised.*

Id. at 585, 586 (emphasis added) (internal citations and quotations omitted).

Relying upon this history, St. Paul argues the relitigation exception encompasses the full scope of the res judicata doctrine, applying both to claims actually litigated and claims that could have been litigated in federal court. St. Paul further argues the district court therefore erred when it limited application of the relitigation exception to claims actually litigated. We disagree. As the district court recognized, the legal landscape changed in 1998 when the Supreme Court decided Chick Kam Choo.

In Chick Kam Choo, the Supreme Court indicated the relitigation exception must be narrowly construed. 486 U.S. at 146. More specifically, the Court limited the scope of the exception to claims or issues *actually decided* in federal court:

Thus, as Atlantic Coast Line[4] makes clear, an essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court. Moreover, Atlantic Coast Line illustrates that this prerequisite is strict and narrow. The Court assessed

_____

[4]Atl. Coast Line R.R. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281 (1970).

the precise state of the record and what the earlier federal order actually said; it did not permit the District Court to render a *post hoc* judgment as to what the order was *intended* to say.

Id. at 148.

Subsequent to Chick Kam Choo, several circuits have indicated the relitigation exception's incorporation of res judicata extends only to those claims actually litigated in federal court, not to claims which merely could have been litigated.

By referring to both 'claims' and 'issues,' we understand the Supreme Court to have permitted the relitigation exception to be applied to protect a federal court's judgment that would be entitled to more than the issue-preclusion effect of collateral estoppel. A judgment adjudicating a claim could also be protected. But by insisting that the 'claims or issues . . . actually have been decided,' the Court was not permitting protection of the full res judicata effect of a judgment, i.e., preclusion of claims that, while not litigated, arose from the same common nucleus of operative facts as the litigated claim.

Smith v. Woosley, 399 F.3d 428, 434 n.8 (2d Cir. 2005) (internal citation omitted); see also Tex. Commerce Bank Nat'l Ass'n v. Florida, 138 F.3d 179, 182 (5th Cir. 1998) ("Contrary to TCB's contentions, however, the Supreme Court in Chick Kam Choo emphasized that claims must be actually litigated in federal court to qualify for the relitigation exception."); Am. Town Ctr. v. Hall 83 Assocs., 912 F.2d 104, 112 n.2 (6th Cir. 1990) ("[T]here were additional claims in the state complaint that were not discussed in the federal judgment – the breach of good faith and the promissory estoppel issues. Because these claims could have been raised in the federal complaint, the state has the authority to bar them under res judicata. But the issue here is whether the district court could enjoin state proceedings under the relitigation exception, where some of the issues in the state complaint were not raised in the federal case. . . . [T]he

additional claims in the state court proceeding limit the federal court's authority to enjoin. As such, the refusal to enjoin the Michigan proceeding was proper.").

St. Paul contends because <u>Chick Kam Choo</u> involved the doctrine of collateral estoppel, not res judicata, the Supreme Court's references to "claims" should be treated as dicta. St. Paul urges us to join the Ninth Circuit, which believes the relitigation exception encompasses the full scope of the doctrine of res judicata:

> We disagree with those Circuits which have concluded that the relitigation exception is limited to issues "actually litigated" in a prior court proceeding. As the Supreme Court noted in <u>Choo</u>, the relitigation exception is "founded in the well-recognized concepts of res judicata and collateral estoppel." 486 U.S. at 147, 108 S.Ct. at 1690. To read <u>Choo</u> as the other Circuits have, however, would in essence be to read res judicata entirely out of section 2283. Any issue which was 'actually litigated' by the parties in a prior proceeding will be barred by collateral estoppel ("issue preclusion"), without any need to rely on res judicata ("claim preclusion").

<u>Western Sys., Inc. v. Ulloa</u>, 958 F.2d 864, 870 (9th Cir. 1992).

We decline St. Paul's invitation to join the Ninth Circuit. Instead, we believe <u>Chick Kam Choo</u> requires us to adopt the narrower construction of the relitigation exception followed in other circuits, which is consistent with the approach this circuit has taken. See <u>Canady</u>, 282 F.3d at 1005 ("The relitigation exception is narrowly construed and allows a district court to enjoin litigation of only those claims and issues that the district court has already decided."); <u>see also</u> <u>In re SDDS, Inc.</u>, 97 F.3d 1030, 1037 (8th Cir. 1996) ("[T]he relitigation exception is 'narrow and [is] not to be enlarged by loose statutory construction.'" (quoting <u>Chick Kam Choo</u>, 486 U.S. at 146)); <u>In re BankAmerica Corp. Sec. Litig.</u>, 263 F.3d 795, 803 (8th Cir. 2001) ("In the context of the Anti-Injunction Act, these principles [of federalism and comity] demand that '[a]ny doubts as to the propriety of a federal injunction against state court

-8-

proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy.'" (quoting <u>Atl. Coast Line R.R. v. Bhd. of Locomotive Eng'rs</u>, 398 U.S. 281, 297 (1970))).

In <u>Ulloa</u>, the Ninth Circuit indicated the more restrictive reading of <u>Chick Kam Choo</u> reads res judicata entirely out of § 2283. We disagree. <u>Ulloa</u> appears to conflate the distinct concepts of issue preclusion and claim preclusion. While it is true "issues" actually litigated will be barred by collateral estoppel without having to rely on res judicata, our concern here is with "claims" not "issues." In order to determine whether the restrictive reading of <u>Choo</u> reads res judicata entirely out § 2283, the relevant inquiry is whether any "claim" actually litigated in a prior proceeding would be barred by collateral estoppel, without any need to rely on res judicata.

For example, assume a plaintiff brings a workers compensation claim against another party. One of the disputed issues is whether the parties have an employee/employer relationship. The court decides there is no employee/employer relationship and dismisses the claim. The plaintiff subsequently files another action against the same party, bringing the same workers compensation claim. The subsequent claim would be barred by res judicata, not collateral estoppel, because the same claim was actually litigated in the prior proceeding. The second court would not have to address collateral estoppel, because res judicata would bar the entire claim without having to determine whether particular issues were actually litigated.

We also reject St. Paul's suggestion we can ignore the Supreme Court's references to "claims" as mere dicta. In <u>Chick Kam Choo</u>, the Supreme Court discusses both the doctrines of res judicata and collateral estoppel, and specifically refers to both "issues" and "claims." We are not free to ignore the references to res judicata and "claims" as accidental.

Federal courts . . . are not 'free to limit Supreme Court opinions precisely to the facts of each case.' McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 19 (1st Cir. 1991), cert. denied, 504 U.S. 910, 112 S.Ct. 1939, 118 L.Ed.2d 545 (1992).  Instead, federal courts 'are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings, particularly when ... [the dicta] is of recent vintage and not enfeebled by any [later] statement.' Id.

City of Timber Lake v. Cheyenne River Sioux Tribe, 10 F.3d 554, 557 (8th Cir. 1993).

Finally, St. Paul argues Chick Kam Choo used the word "claim" in a broad sense to refer to all assertions or a right to relief by a plaintiff with respect to a particular set of facts, such that the word should be interpreted to encompass both claims that could have been litigated and those claims actually litigated.  As support for this argument, St. Paul refers us to Supreme Court decisions decided before and after Chick Kam Choo which it contends used the term "claim" in a more general sense to refer to all of a party's assertions of legal rights arising from a particular transaction.  See Baker ex rel. Thomas v. Gen. Motors Corp., 522 U.S. 222, 233 n.5 (1998) (indicating "a valid final adjudication of a claim precludes a second action on that claim or any part of it"); Kremer v. Chem. Constr. Corp., 456 U.S. 461, 482 n.22 (1982) (stating the doctrine of res judicata "has recently been taken to bar claims arising from the same transaction even if brought under different statutes."); Allen v. McCurry, 449 U.S. 90, 95 n.6 (1980) (indicating the Court recently had noted "trends in the state and federal courts expanding the preclusive effects of judgments, such as the broadened definition of 'claim' in the context of res judicata").

We disagree these isolated footnotes from decisions spanning eighteen years, when cobbled together, support St. Paul's argument.  We doubt the Supreme Court would refer to "claims" in the broad sense urged by St. Paul, only to immediately modify the term by limiting application of the relitigation exception to "claims" which "actually have been decided by the federal court." Chick Kam Choo, 408 U.S. at 148.

-10-

## III

For the reasons stated, we affirm the decision of the district court.

_____